(C. D. 473)

ADES BROS., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 21, 1941)

*Philip Stein* for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; KEEFE, J., not participating

EVANS, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been assessed

in excess of the amount due as customs duties upon importations of merchandise from China. The only claim asserted by the plaintiff is that the collector in converting the currency of the invoice, the Swatow dollar, into United States dollars, used the wrong rate of exchange. His specific claim is as follows:

 \* \* \* that duty should have been assessed on the basis of Swatow Paper Currency at the rate of $.245 instead of Chinese National Currency at the rate of $.297452 as assessed and liquidated, said Swatow Paper Currency being the medium of exchange on the date of purchase and the date of exportation of the merchandise herein.

Section 522, Tariff Act of 1930, governing conversion of currency is in the following language:

SEC. 522. CONVERSION OF CURRENCY.

 (a) VALUE OF FOREIGN COIN PROCLAIMED BY SECRETARY OF TREASURY.—Section 25 of the Act of August 27, 1894, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year.

 (b) PROCLAIMED VALUE BASIS OF CONVERSION.—For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

 (c) MARKET RATE WHEN NO PROCLAMATION.—If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. For the purposes of this subdivision such buying rate shall be the buying rate for cable transfers payable in the foreign currency so to be converted; and shall be determined by the Federal Reserve Bank of New York and certified daily to the Secretary of the Treasury, who shall make it public at such times and to such extent as he deems necessary. In ascertaining such buying rate such Federal reserve bank may in its discretion (1) take into consideration the last ascertainable transactions and quotations, whether direct or through exchange of other currencies, and (2) if there is no market buying rate for such cable transfers, calculate such rate from actual transactions and quotations in demand or time bills of exchange.

At the hearing held at the port of San Francisco the attorney for the plaintiff in his opening statement asserted that he had taken up the matter of the conversion of Swatow paper currency with the Acting Commissioner of Customs and, at his suggestion, with the

Federal Reserve Bank at New York, where he was advised that the matter was before the Law Division of that institution and that the Treasury Department would be notified when they had arrived at the Swatow rate of exchange. The attorney stated that he would swear to the above if necessary. He further asserted that the Treasury Department did not announce the rate of exchange in the form of a treasury decision, but advised the various collectors of customs that the lower rate would prevail.

There was introduced in evidence on behalf of the plaintiff the testimony of the assistant collector at the port of San Francisco in charge of liquidations. He produced a copy of a letter from the Customs Information Exchange which was received in evidence without objection. In said letter the Customs Information Exchange notified customs officers that the conversion of Swatow paper dollars into United States currency should be made at the buying rate of the Yuan National dollar, "in the ratio of 120 Swatow paper dollars to 100 Yuan National dollars"; this ruling to apply to merchandise exported to the United States during the period from June 26, 1937, through June 22, 1939.

The plaintiff then moved to incorporate the record in the case cited in exhibit 1, which motion was denied upon objection being made by the Government. Plaintiff also cited Abstract. 42692. We have examined the last-cited decision and find that it has no application to the present controversy.

The assistant collector then testified that the rate of conversion of the currency in the instant case, according to the instructions above set forth, would be in the ratio of 120 Swatow paper dollars to 100 Yuan dollars. Instead of that the rate of $.297452 was used.

An examination of the official papers discloses that the date of exportation given thereon, that is, the date the importing vessel sailed, is October 27, 1937. This date was apparently approved by the liquidator because it is underlined in red ink on the entry. By reference to T. D. 49218 we find that the rate of exchange given for the Yuan dollar on that date is $.294062. It is therefore apparent that the rate promulgated under authority of section 522 of the Tariff Act of 1930 was not used in the conversion of the currency of this invoice.

By using the rate of exchange promulgated for October 27, 1937, viz, $.294062, and a ratio of 120 Swatow dollars to 100 Yuan dollars, we find that the value of the Swatow dollar would be $.245055. The plaintiff in his pleadings claims a value of $.245. It we accept the letter of instruction from the Acting Commissioner of Customs (exhibit 1) as a substantial compliance with the provisions of section 522, *supra*, we think the plaintiff has sustained the burden of proof cast upon him. We further find that his pleadings are sufficient in that his claimed value for conversion purposes is $.245, which, as set

forth above, is correct although the figures have not been carried out quite far enough.

The Customs Regulations of 1937, in effect at the time this entry was made, provide in article 822 (d) as follows:

(d) * * * In special cases, or where a rate of currency does not appear on the daily list furnished, the collector will request such rate from the customs information exchange.

This regulation is a reasonable one.

Exhibit 1 set forth above is a notice to collectors from the Customs Information Exchange in regard to the exchange rate to be employed in conversion of the China Swatow local paper dollar into United States currency, and relates to cases where the rate of currency does not appear on the list certified by the New York Federal Reserve Bank. It therefore is a substantial compliance with the regulations promulgated under authority of the statute.

We find upon the record as presented that the plaintiff's claim that the currency of the invoice, the Swatow dollar, should have been converted into United States dollars at the rate of $.245055, should be and the same hereby is, sustained.

Judgment will be rendered accordingly.   It is so ordered.